UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

APR 10 2023

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| BRANDON BARNES & | § | |
| SENRAB SERVICES LLC. | § | |
| Plaintiffs, | § | |
| | § | |
| | § | Civil No: 4:23-CV-00483 |
| v. | § | JURY DEMANDED |
| | § | |
| TOM PEACOCK NISSAN-CADILLAC, INC., | § | |
| NISSAN MOTOR ACCEPTANCE CORP | § | |
| TRUIST FINANCIAL CORPORATION | § | |
| TRUIST BANK | § | |
| WILMINGTON TRUST N.A. | § | |
| US BANK NATIONAL ASSOCIATION | § | |
| Defendants, | § | |

## COMPLAINT

### PARTIES

1. Plaintiff – BRANDON BARNES, 505 Wells Fargo Dr. 814 Houston, Texas near 77090

2. Plaintiff - SENRAB SERVICES LLC., 505 Wells Fargo Dr. 814 Houston, TX 77090

3. Defendant - TOM PEACOCK NISSAN-CADILLAC, INC. 15300 North Fwy Houston, TX 77090-6002

4. Defendant – NISSAN MOTOR ACCEPTANCE Co LLC, One Nissan Way Franklin, TN 37067

5. Defendant - TRUIST FINANCIAL CORPORATION/TRUIST BANK, 214 NORTH TRYON STREET, CHARLOTTE, NC, 28202

6. Defendant - WILMINGTON TRUST, NATIONAL ASSOCIATION, RODNEY SQUARE NORTH, 1100 NORTH MARKET STREET, WILMINGTON, DE, 19890

7. Defendant - US BANK NATIONAL ASSOCIATION, 800 NICOLLET MALL, MINNEAPOLIS, MN, 55402-4302 – Indenture Trustee to TRUIST FINANCIAL CORPORATION

## JURISDICTION

8. This court has subject matter jurisdiction & authority over matters pertaining to actions regarding SECURITIES FRAUD, actions relating to the fraudulent use of NEGOTIABLE INSTRUMENTS, actions relating to violations of the federal TRUTH IN LENDING ACT arising from consumer loan transactions, actions related to violations of the FAIR CREDIT REPORTING ACT & actions related to FAIR DEBT COLLECTIONS ACT.

## CLAIMS

9. **SECURITIES FRAUD** – Pursuant of 12 CFR § 360.6 (2) Defendant TOM PEACOCK NISSAN-CADILLAC, INC., did not disclose that the consumer credit application would be a transferable financial asset in addition to being "self-liquidating paper" as described in 17 CFR § 260.11b-6. These assets, including documents not initiated or executed by the plaintiffs, were then transferred to all defendants listed in this complaint in addition entities that defendant TOM

PEACOCK NISSAN-CADILLAC, INC., has a "business arrangement" as stated at 16 CFR § 433.1 (g); or transferred by means of an Indenture Trustee/Owner Trustee relationship of the defendants. Defendant NISSAN MOTOR ACCEPTANCE having a peculiar "business arrangement" with Defendant TOM PEACOCK NISSAN-CADILLAC, INC., as shown in state filings and (NMAC) even being incorporated with in the loan documents and shows (NMAC) as the beneficiary of the insurance policies. Further TOM PEACOCK NISSAN forged loan documents of which were eventually securitized sold and transferred for a profit. Notice with in the exhibits that there are 2 contracts with unique a customer# & deal# as shown in the top right corner of the face of contracts reflected on the page that has the alleged truth in lending disclosure. Forging or falsifying documents for the purposes creating more securities to be sold for profit to various entities is fraud. If this was an inconsequential occurrence then TOM PEACOCK need not forge the documents, they in effect would be able to draft an unlimited amount contracts and then sell the securities. But that's not what the plaintiff is accusing TOM PEACOCK of, as an unsigned contract is not a negotiable instrument, it is not enforceable and is overall invalid, what TOM PEACOCK did was forge documents to make them appear legitimate so that they could be securitized which over time would become very lucrative and valuable, this giving them incentive to commit securities fraud and involve all of the other defendants TRUIST BANK, TRUIST FINANCIAL CORPORATION, NISSAN

MOTOR ACCEPTANCE, US BANK as INDENTURE TRUSTEE to both TRUIST FINANCIAL CORPORATION & NISSAN MOTOR ACCEPTANCE, and WILMINGTON TRUST as OWNER TRUSTEE to NISSAN MOTOR ACCEPTANCE. It also a fraudulent action to not disclose what TOM PEACOCK would do with the contracts forged or otherwise as the contracts had no value without being properly executed and signed. this action leaving the consumer completely handicapped as the disparity between adequate consideration is so overwhelming lopsided as no person having full knowledge of what were to become of the signed documents would ever agree to such predatory terms by signing an agreement that doesn't meet the prerequisites of an enforceable contract. The plaintiff was not able to financially benefit from the securities that his signatures (forged or otherwise) made possible and that were being transferred and sold because at the time the plaintiff did know because it was not disclosed or concealed from him. TRUIST BANK and their dealer finance department the co-conspirators of the deception willfully took the securities even though they knew there was only 1 transaction and they have in their possession multiple securitized contracts and applications for the same transaction and automobile. TRUIST BANK also tried to cover up their fraud by not releasing all of the allegedly signed documents that was requested by the plaintiff as will be shown by the hours of recorded phone calls between the plaintiff and Truist representatives. They failed to provide any good reason why the customer could not get a copy of all the

documents the customer allegedly signed and executed. Finally, after some quarrelling the plaintiff was able to secure some documents from the TRUIST representative, but they accidentally sent the wrong document, they sent a document with forged signatures different deal numbers and customer numbers, fraudulent signatures and initials the dates were off and the loan terms and amounts were also changed. NMAC and its trustees also financially benefitted from the deception as UCC filings show they have had an ongoing business arrangement with TOM PEACOCK NISSAN for the greater part of 2 decades, they were also given all of the securities/documents as well and was transferred and deposited to all of its subsidiaries, INDENTURE and OWNER trustees.

10. **TRUTH IN LENDING VIOLATIONS, REGULATION Z** – Regardless of intent, defendant TOM PEACOCK NISSAN-CADILLAC, INC., had throughout the transaction misleading, missing and incomplete disclosures about the determination of finance charge, annual percentage rate, credit life-accident & health insurance, cash down payments in a consumer finance transaction and security interest disclosures. Lack of transparency with regards to the negotiable instruments being financial assets whether they be applications, contracts or any other instrument serving as collateral to fund the "purchase money loan" as described at 16 CFR § 433.1 (d). Further, TOM PEACOCK and TRUIST BANK has misleading truth in lending disclosures as a purchase money loan is a cash advance that is to be exchanged for a finance charge, a finance charge as defined

at 15 USC § 1605 " as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended", the way the finance charge is presented on the documents does not show the finance charge being the sum of all charges which leaves a large discrepancy between the cash advance and the finance charge. Also, cash transactions are not included in a finance charge and this transaction has a $1500 cash downpayment. Further TOM PEACOCK presents itself as the creditor it is not, it is the "seller" and a credit arranger. In addition to all of this, on the MOTOR VEHICLE PURCHASE ORDER page of the contract states that the base price of the automobile is $60,128.45 but interestingly enough the motor vehicle registrations exhibit shows that the base price is $46,260 some $13,868.45 less than what stated on the purchase order. The purchase order also shows $12,275 in unexplained fees as follows "SRV CONT - $5,500", "MAINT CONT - $2,000", "NATION MOTOR CLUB LLC - $1,200", and "SELECT 3 / VIN ETCH – $3,575". These are not minor discrepancies these appear to done intentional motivated by greed, although those alleging TRUTH IN LENDING violations need not prove intent but only need to prove that a violation occurred the plaintiff wishes to notate this matter.

11. **UNFAIR CREDIT REPORTING & DEBT COLLECTION PRACTICES -** Pursuant of 15 U.S. Code § 1681a – (2) (A) (i) TRUIST BANK violated the FCRA by reporting experiences and transactions as it is clear that these things are to be excluded from the consumer report as quoted below, *"report containing*

*information solely as to transactions or experiences between the consumer and the person making the report;"*. Nor was any disclosure provided pursuant to 15 U.S. Code § 6803 - Disclosure of institution privacy policy and neither was any opportunity given to opt out pursuant to 15 U.S. Code § 6802 (b). Also, while in the midst of a legal proceeding TRUIST BANK either or transferred their security interest to or hired SUMMS SKIP / RECOVERY CONNECT APP. The plaintiff was able to obtain a copy of the order where SUMMS SKIP was listed as the lien holder of the vehicle not TRUIST BANK. SUMMS SKIP made several attempts to forcibly remove the plaintiff's property even after being put on notice that there is active and ongoing legal proceeding.

## NARRATIVE

12. PLAINTIFF went to TOM PEACOCK NISSAN late December 2021 for the purposes of purchasing automobile. The transaction was finalized early February 2022, In August 2022 TRUIST BANK received additional documents that were supposedly executed by the consumer but in fact were forged, altered and fraudulent documents, including but not limited to applications, contracts and other negotiable instruments with the allonge pages that all defendants received as part of a standing "Business Arrangement" and the subsequent Parent Companies, Subsidiaries, Indenture & Owner Trustees; transferred, deposited & securitized the instruments.

13. In September 2022 the plaintiff contacted TRUIST BANK and requested the Bill of Sale, Purchase Order & all documents containing the endorsement or signature of the consumer, however TRUIST BANK refused to provide all the requested documents but acknowledged that more documents were on file but that they could not provide the documents even though the documents contained the plaintiff's signature. While on the phone with the representative and requesting what documents they would divulge a contract was sent to the consumer which differed by means of signatures, initials, dates, loan amounts both principal and interest & different customer numbers and deal numbers.

14. After discovering that there were multiple contracts, applications & other negotiable instruments most of which the plaintiff did not authorize or initiate the plaintiff put all parties on notice and filed for an arbitration. This arbitration was denied due to the defendant TOM PEACOCK NISSAN-CADILLAC, INC.'s lack of complete disclosure pursuant of the rules of arbitration set forth by the American Arbitration Association (AAA). This correspondence from the AAA can be found within the exhibits where it also prompts the parties to file in the appropriate courts.

15. Additionally, the Defendant TOM PEACOCK NISSAN-CADILLAC initiated hard inquiries onto the Plaintiffs' consumer report long after the initial documents were executed. TRUIST refused to provide documentary evidence, signed, documents, any documentation showing the origin of the credits, GAAP

accounting entries both public & private & a detailed ledger of the statement of account.

16. Pursuant to 16 CFR 433.2 the plaintiff reserves his rights to assert his claims and defenses against all holders of the instrument and respectfully requests this court will hear this case.

## RELIEF

A. Defendant TRUIST BANK, deliver MCO TITLE to plaintiff for the 2021 NISSAN TITAN

B. Defendant TRUIST BANK, CEASE THE UNFAIR CREDIT REPORTING & DEBT COLLECTION

C. Defendant TRUIST BANK, SHOULD HAVE THE ENTRY ON PLAINTIFF'S CREDIT REPORT MARKED AS "PAID as AGREED" & "NEVER LATE"

D. Defendant TRUIST BANK, should return of tender of the plaintiff in the amount of $10,000.

E. Defendants TOM PEACOCK NISSAN-CADILLAC, INC. & TRUIST BANK shall pay twice the amount (15 USC § 1640 – CIVIL LIABILITY) of the finance charge (15 USC § 1605 – Determination of the finance charge) $89,684.16 x 2 = $179,368.32, this amount including the cash down payment.

F. The agent of the Plaintiffs in this case claims all rights, titles and equitable interests owed or held for the benefit of the principals, and therefore all proceeds arising from security interest owed to the principal shall be forwarded to the estate for processing.

G. With regards to the value of the "Financial Assets" and "Self-Liquidating Paper" (applications & contracts) transferred to and received by Defendants; TRUIST BANK, NISSAN MOTOR ACCEPTANCE, WILMINGTON TRUST NATIONAL ASSOCIATION, & US BANK NATIONAL ASSOCIATION respectively shall be returned back to the Plaintiffs in the form of non-cancelable lines of credit.

II. All reasonable costs incurred by the Plaintiff with regards to this case and any applicable fees held within the Plaintiffs fee schedule shall be assessed if this court has the authority to compel such fees be paid.

Respectfully,


Barnes-Brandon-T, Authorized Agent for the Plaintiffs

04/07/2023

info@senrabservices.net